SCHULZ v. SECOND AVE. RY. CO.

(Supreme Court, Appellate Division, First Department. December 22, ·1896.)

CARRIER—INJURY TO PASSENGER—SUFFICIENCY OF EVIDENCE.
    There could be no recovery for personal injuries alleged to have been
    .caused by defendant's negligent starting of a car, from which plaintiff was
    alighting, where the evidence was so indefinite as to leave it conjectural as
    to whether plaintiff's fall resulted from that cause. Rumsey and Patterson,
    JJ., dissenting.

Appeal from special term, New York county.

Action by Emily Schulz against the Second Avenue Railway Com-
pany. From a judgment entered on a verdict in favor of plaintiff,
and from an order denying a motion for a new trial, defendant ap-
peals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
WILLIAMS, and PATTERSON, JJ.

Payson Merrill, for appellant.
Edward Miehling, for respondent.

WILLIAMS, J. The action was brought to recover damages for
personal injuries alleged to have been caused by the negligence of
defendant. The plaintiff was injured about midnight of the 23d
day of August, 1891, at the corner of Fifth street and First avenue,
in the city of New York, while alighting from one of the defend-
ant's street horse cars, upon which she had been riding with her
father. The car was an open one, having side curtains, and on the
night in question it was rainy and wet, and the curtains were down.
The plaintiff's theory of the accident at the trial was that the con-
ductor stopped the car to permit these people to alight; that the
plaintiff's father got down·upon the ground, and then plaintiff started
to get down, and when she was on the car steps, which were wet

and slippery, the car was started, causing her to slip, and fall upon the ground.    At the time of the trial, which took place nearly five years after the accident, the plaintiff's father was dead, the conductor of the car could not be found, the driver testified that he knew nothing of any accident having occurred, and no passengers upon the car were produced.    The only witness as to what occurred, therefore, was the plaintiff herself, and the question is whether, upon her evidence, it was satisfactorily shown that there was negligence on the part of the defendant in starting the car while the plaintiff was alighting, and that negligence caused the plaintiff's injuries.    On the 5th of September, 1891,—about two weeks after the accident,—the plaintiff made a written statement, in which she said that the car was standing, and not moving, when she fell; that she did not know how she happened to fall; that she thought she must have slipped off the step of the car, as it was raining, and the car step was very wet; that the curtains of the car were hanging, and she could not see very well where she was stepping.    Dr. Jersey testified at the trial that on the 11th of September, 1891, he examined the plaintiff, and she then told him that while leaving a car of the Second Avenue Line, which was standing still, she slipped and fell, because of the night being wet and damp, and the car step slippery; that he made a report at the time of the examination, which he produced at the trial.    These statements, made soon after the accident, seemed to indicate that the plaintiff did not really know just how she happened to slip; that she did not then understand that it was the starting of the car that caused her to slip and fall.    At the trial, nearly five years after the accident, she was called upon to detail the circumstances of the accident, and it seems to us that she gave no satisfactory account, showing a negligent starting of the car, which was the cause of the accident and injuries.    First she said, in reply to her own counsel, that she could not tell whether the conductor stopped the car.    Then she said the car was getting in motion, and as she was getting out the car got in motion, and she fell; the car was started.    Then she said the car was in motion, and as she was trying to get out the curtain was lifted on the side, and she slipped and fell down as the car was in motion.    Then, in reply to the court, she said that the car was in motion as she was alighting to get out; it was moving as she was trying to get out; it had not stopped at all; that it stopped, and as she was trying to get out, it got in motion; the car was in motion; she could not tell whether it had stopped before that.    Then, in answer to her counsel, she said the car stopped before she fell, and then it started up again, after that, just before she fell.    A recess was then taken by the court, and after recess the plaintiff was again put upon the stand, and was asked by her counsel to tell what occurred in her own way, and she replied that her father, she thought, gave the signal to stop.    As he was giving the signal to stop, the car stopped as she was getting out.    Her father got out first.    As her father got out first, he stepped out, and gave the signal, and as soon as he gave the signal he got out, the car got into motion, and she fell down.    Then the court took the witness again, and exam-

ined her, and she said the car stopped before she started to get down, and then she tried to get down, and fell. As she was getting out, the car stopped. It was raining, and as she was getting out the car stopped, and she made a mistake. The car was slippery. It was raining, and as she was getting out she slipped. The car gave a jerk, and she fell down. As she was getting out, she slipped, and the car was in motion, and she fell. The court then directed counsel to try and make it plain, and plaintiff's counsel thereupon started to question her, but the court took her away from the counsel, and examined her further as follows:

"Q. Did you slip before the car started off? A. I slipped. Q. You slipped first? A. Yes, sir; as I was getting out of the car. It was in motion, and I fell. Q. Drop that 'in motion.' Don't tell us anything about it just now, because that bewilders you. Did the car stop before you slipped, or when you slipped, or did you slip at the same minute? A. I slipped at the same minute."

This closed plaintiff's examination upon this subject. There was nothing brought out on the cross-examination in any way to clear up the story told by her on the direct. The burden of proving a negligent starting of the car while the plaintiff was alighting, and which starting caused plaintiff to fall, was upon the plaintiff. She was the interested party, and if she could not tell how the accident happened so clearly as to enable the jury to see that it was the starting of the car after it had stopped which caused her to slip and fall, she certainly should not have been permitted to recover upon any guess or speculation as to how it occurred. Negligence should be satisfactorily established, in order to justify a finding of the fact. The plaintiff might well have slipped getting down from the car on such a night, though the defendant was guilty of no negligence. No presumption of negligence could arise from the fact that she did slip and fall. If she started to get down before the car stopped, and the stopping of the car caused her to slip and fall, no negligence of defendant could be found. She swore to just this, as already seen. If she started to get down before the car stopped, and while it was still in motion, and slipped and fell by reason of the car being in motion, no negligence of defendant could be found. She swore to just this, as already seen. If she could not state just how she happened to slip and fall, no negligence of defendant could be found. Only in the event that her slipping was caused by the starting of the car after it had stopped, and before she had gotten upon the ground, could negligence of the defendant be found which caused the injuries. This idea was at times vaguely suggested by her, but it does not seem to us her evidence was so clear and unequivocal as warranted the jury in finding the fact to be that the slipping and falling was the result of the defendant's negligence in starting the car while she was alighting. It was not proper to allow the jurors to guess or speculate as to what the fact was, when the plaintiff at no part of her examination by her own counsel or by the court clearly and distinctly stated the fact as the jury was asked to find it. Jurors are too much inclined to favor women against a corporation, to allow them to find negligence upon doubtful and uncertain evidence. Plaintiff's evidence was much

more consistent with a finding for the defendant than for the plaintiff upon this issue of negligence. She several times, in the course of her examination, testified to facts negativing the idea that the starting of the car caused her injuries. It is very likely the plaintiff told the truth about the matter in her report and statement made in September, 1891, shortly after the accident. We do not see how the finding of negligence can be sustained upon her evidence here at all.

We think the judgment and order appealed from should be reversed, and a new trial should be granted, with costs to appellant to abide event.

VAN BRUNT, P. J., and BARRETT, J., concur.

RUMSEY, J. (dissenting). On the 23d of August, 1891, the plaintiff, with her father, was riding on a horse car of the defendant. That car was a summer car, with side curtains, which, as the day was rainy, were down. Just before they reached the place of their destination, the father notified the conductor to stop the car, and himself alighted. The plaintiff then attempted to get out of the car, when she fell, and received the injury of which she complains, and to recover for which she brings this action. The case was tried in March, 1896. At that time the plaintiff's father was dead, and the driver and conductor of the car had left the employ of the defendant, so no witnesses could be produced upon either side to testify as to the manner in which the accident occurred, save the plaintiff herself. Consequently there was no testimony given by the defendant as to the manner in which the accident happened, except a declaration in writing of the plaintiff, made shortly after the occurrence, which will be referred to later. The plaintiff had a verdict for a small amount, and, after a motion for a new trial had been made and denied at the trial term, this action was brought. The defendant does not rely upon any exception taken upon the trial, but based its motion and bases this appeal solely upon the ground that the evidence was not sufficient to warrant the verdict, and that is the only question presented upon this hearing.

It is undisputed that the plaintiff was a passenger upon the defendant's railroad; that she was about to alight from the car, and fell, either just after she had stepped off of the car or while she was in the act of stepping from it. Her story of the transaction is not perfectly clear, and it is claimed by the defendant that it is so contradictory that the jury are not justified in believing it. Upon her direct examination, after stating some few preliminary facts, the plaintiff testified that her father notified the conductor to stop.

"He gave the signal to the conductor to stop. I could not tell whether the conductor stopped the car. Q. Don't you know whether the car was stopped when you tried to get off? A. He stopped, and as I was getting out—."

Then came a question which was objected to. Then the court asked the witness:

"What were you going to say 'as you got out'? A. The car was getting in motion, and as I was getting out the car got in motion, and I fell. Q. It started? A. Yes, sir."

Then, in answer to the plaintiff's counsel, she stated again:

"My father went out first. It was a rainy day. There were no curtains up; they were down. The car was in motion, and as I was trying to get out the curtain was lifted on the side, and I slipped and fell down as the car was in motion. By the Court: Q. Was the car in motion as you were trying to get out? A. Yes, sir. Q. It was moving, as you were trying to get out? A. Yes, sir. Q. Had it stopped at all? A. No. Q. Never stopped? A. It stopped, and as I was trying to get out it got in motion. The car was in motion. Q. Had it stopped before that? A. I could not tell."

In answer to her own counsel she testified again:

"Q. You said just now that it stopped, and then you said you could not tell. Now, just think it over. Had the car stopped before you fell? Had the car stopped at all before you fell? A. The car stopped. It stopped as soon as father made the motion to the conductor. That was before I fell. The car stopped before I fell, and then it started up again after that, just before I fell. Q. I want you to tell the jury whether the car was at a full standstill when you attempted to get out. A. My father gave the signal; yes, sir."

The witness was then told to tell the jury all that happened from the time her father gave the signal to the conductor to stop until she fell off, to which she replied by telling the streets over which the car had gone after she boarded it. Then she proceeded:

"My father, I think, gave the signal to stop. As he was giving the signal to stop, the car stopped as I was getting off. Father went out first. As father got out first, he stepped out, and gave the signal, and as soon as he gave the signal he got out and the car stopped, and as soon as I got out the car got into motion, and I fell down, and I do not know anything more about it. After I fell, I was unconscious."

She was then asked by the court:

"Q. I did not understand what you said a minute ago. Did the car stop before you started to get down, or not? A. Yes, sir. Q. The car stopped first? A. Yes, sir. Q. Then you tried to get out? A. Yes, sir. Q. And fell down? A. Yes, sir. Q. How did you come to fall? A. As I was getting out, the car stopped, and I made a mistake. The car was slippery. It was raining, and as I was getting out I slipped. The car gave a jerk, and I fell down; and I don't know anything more about it. Q. Which happened first,— your slipping or the car starting? A. As I was slipping— As I was getting out, I slipped, and the car was in motion, and I fell. Q. Did you slip before the car started off? A. I slipped. Q. You slipped first? A. Yes, sir; as I was getting down the car it was in motion, and I fell. Q. Did the car stop before you slipped, or when you slipped, or did you slip at the same minute? A. I slipped at the same minute."

This last question was asked by the court.

Upon her cross-examination the witness stated nothing that was material as to the way in which the accident occurred. She was, however, upon her cross-examination, confronted with a paper which she signed, which contained printed questions and answers written by a physician. So far as material, these questions and answers were as follows:

"Q. At what day and what hour did this accident occur? A. Sunday, August 23, 1891, at 11:10 p. m. Q. Where were you when it occurred? A. Getting off the car. Q. Was the car standing or moving? If moving, about how fast? A. The car was standing. Q. Give full account as to the accident as witnessed by you. A. I do not know how I happened to fall. I think I must have slipped off the step of the car, as it was raining, and the car step was very wet. The curtains of the car were hanging, and I could not see very well where I was stepping. When I fell, I landed on my left side, with my foot under me."

That is substantially all the evidence which was produced by the plaintiff or against her as to the manner in which this accident happened.

One observation at once occurs to one examining this evidence, and that is that it was susceptible of a construction that the witness either started to get off the car when it was in motion, after it had been stopped for her father, or that the car started with a jerk as she was getting off. If the latter was the fact,—that the car started as she was getting off,—it must be conceded that it was negligence on the part of the defendant, for which it would be liable. Roberts v. Johnson, 58 N. Y. 613. If the other hypothesis be the correct one,—that the car had stopped, but started before the plaintiff had gotten off of the car, and while she was attempting to do so, and she fell because of the unexpected start,—still the question whether the accident was caused by the defendant's negligence, and the qustion whether the plaintiff was guilty of contributory negligence, was a question for the jury. Eppendorf v. Railroad Co., 69 N. Y. 195. Either of these hypotheses might have been adopted by the jury upon the testimony as it stood. It must be remembered that the case could not have been taken away from the jury by the court. If a motion for a nonsuit had been made, the plaintiff, upon the decision of that motion, was entitled to have all the evidence construed in the manner most favorable to her contention, and every inference drawn in her favor which could be thus drawn; and if, upon that construction of the evidence, the jury would have been warranted in giving her a verdict, the court would not be justified in taking the case from the jury. McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647; Harris v. Perry, 89 N. Y. 308, 311; Sherry v. Railroad Co., 104 N. Y. 653, 656, 10 N. E. 128. If a motion for a nonsuit had been made, or the court had been asked to direct a verdict for the defendant, the plaintiff would be entitled to insist that the evidence should be so construed in passing upon that question as to establish that she was thrown down by a jerk given to the car as she was getting out. Therefore we must start in the examination of this testimony with the proposition that the case must have been sent to the jury.

There was no evidence directly contradicting the plaintiff, except the written paper which was produced, even if that paper was so. It appeared from the testimony of the plaintiff that when that paper was written she was under the influence of ether, which had been given to her to relieve the severe pain from which she suffered because of the accident. This was not disputed. The weight to be given to that paper, therefore, was solely a question for the jury. They might well have found that under the circumstances the statements in the paper were not to be accepted as contradicting the plaintiff's testimony. But that paper does not necessarily contradict the story told by plaintiff upon the trial. It is evidently incomplete, and as she says it was what "she thinks" must have happened. Such a story, told while she was under the influence of ether, might well have been disregarded by the jury. Her testimony given upon direct examination, while it was halting, and not

at all clear, as might well be the case so long a time after the acci-dent occurred, was not inconsistent or contradictory, so as to de-prive her of credit. As to the main facts—that the car was in mo-tion, or started with a jerk, when she attempted to get out—there was no uncertainty in her testimony. She reiterates that fact every time she tells how the accident happened. In either case it was neg-ligence for the defendant to start the car as the witness was about to get out, and the jury might have found that such negligence caused the accident. We are therefore confronted with this condi-tion of affairs: The case was one in which a motion for a verdict for the defendant could not be granted because the most favorable construction reasonably to be given to the evidence would warrant a recovery by the plaintiff. Whether the alleged contradictory evi-dence was of sufficient weight to contradict the plaintiff's testimony, was purely a matter for the jury, because of the circumstances un-der which it was given. Contradictory inferences might have been drawn from the testimony upon direct examination, and, where such inferences are to be drawn, they must be drawn by the jury. There is no aspect of the case in which it can be said that the evidence could be taken away from the jury, and the question passed upon by the court. It must not be forgotten that questions of this kind are peculiarly questions for the decision of the jury. That rule has never been questioned. The question for the jury arises not only when there is a conflict of testimony between witnesses, but when various inferences may be drawn from undisputed testimony. The jury must settle the dispute, or they must decide which inferences they will draw. There is no rule which requires more evidence in a case of this kind than in any other civil case. All that is neces-sary in any case is that the plaintiff should establish, by a prepon-derance of evidence, the facts which she alleges. In this case there was no testimony against her, and the case could only be taken from the jury if the court is able to say as a matter of law that her testimony is so contradictory and inconsistent as to be wholly in-credible. No such conclusion can be reached. The most that can be said is that the evidence was weak; that the conclusions to be drawn from it were doubtful. But, when that is said, the neces-sity of referring these things to the jury cannot be denied. Upon the whole case, there can be no doubt that the evidence was prop-erly submitted to the jury, and that their verdict should not be set aside.

PATTERSON, J., concurs.